IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

FILED

JUN 1 0 2004

TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

WILLIE MCGEE,

        Petitioner,

v.                        Civil Action No. 2:03-2124

THOMAS MCBRIDE, Warden,
Mount Olive Correctional Center,

        Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action for habeas corpus relief, filed pursuant to the provisions of 28 U.S.C. § 2254. Pro se Petitioner, Willie McGee (hereinafter "Petitioner"), is incarcerated at the Mount Olive Correctional Center, in Mount Olive, West Virginia. This case was referred to the undersigned United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings and a recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Pending is Respondent's Consolidated Motion to Dismiss and Motion for Summary Judgment (docket sheet document # 5).

## PROCEDURAL HISTORY

Petitioner was indicted by a Kanawha County Grand Jury on one count of murder (Case No. 99-F-38) (Resp't's Exs., # 6, Ex. 1). Following a jury trial conducted in April of 2000, Petitioner was found guilty of murder in the first degree, with a recommendation of mercy. (Id., Ex. 2).

14

Petitioner's counsel filed a Motion for a New Trial, which was denied on June 30, 2000. (Id., Ex. 13). On July 27, 2000, Petitioner was sentenced by the Kanawha County Circuit Court (King, J.) to life with mercy. (Id., Ex. 3).

On March 12, 2001, Petitioner was re-sentenced by Judge King in order to allow Petitioner the opportunity to file an appeal to the Supreme Court of Appeals of West Virginia (the "SCAWV"). (Id., Ex. 4, "Order Resentencing Defendant").

On August 2, 2001, Petitioner, by counsel, Assistant Kanawha County Public Defenders Jonathan Byrne and Gregory Ayers, filed a petition for appeal to the SCAWV, asserting the following claims of error:

I.   [Petitioner's] conviction of murder in the first degree is invalid because there is insufficient evidence to prove malice beyond a reasonable doubt.

II.  The trial court erred in refusing to give [Petitioner's] requested provocation instruction and related theory of defense instructions that provocation can reduce murder to manslaughter and defined provocation, thereby depriving the jury of instructions necessary to determine whether [Petitioner] was guilty of manslaughter.

III. The trial court erred in granting the State's motion to prohibit the introduction of a WCHS videotape of [Petitioner's] statement made while being transported from the Charleston Police Department to magistrate court, because the videotape is admissible under the rule of completeness, West Virginia Rule of Evidence 106, to support his claim that he shot the victim to protect his brother.

(Id., Ex. 4). The petition for appeal was refused on January 8,

2002.  (Id.)

Petitioner did not file a petition for a writ of certiorari to the United States Supreme Court.  Thus, his judgment became final on or about April 8, 2002.  See Harris v. Hutchinson, 209 F.3d 325, 328 (4th Cir. 2000)(time for seeking direct review concludes when either the period for filing a petition for a writ of certiorari is filed or when such writ is denied by the United States Supreme Court).

On February 3, 2003, Petitioner filed a pro se petition for a writ of habeas corpus in the Circuit Court of Kanawha County (Civil Action No. 03-MISC-60). (# 6, Ex. 5).  That petition raised the following claims:

I.   Petitioner's conviction of murder in the first degree is unconstitutional and invalid, as it is unconstitutional when the State did not prove malice beyond a reasonable doubt.

II.  The trial court was unconstitutional in refusing to give Petitioner's requested provocation instruction and related theory of defense instructions indicating that provocation can reduce murder to manslaughter and defining provocation, thereby depriving the jury of instructions necessary to determine whether Petitioner was guilty of manslaughter.

   a.  (Under Rule 43) - Right to be present at all critical stages of proceedings, including the charge conference.

   b.  Rule 43 - Ex parte communication between Clerk and jury.

   c.  Juror - Jury instruction was not clear.

3

III.   Ineffective Assistance of Counsel[1].

IV.    The trial court erred in granting the State's motion to prohibit the introduction of a WCHS videotape of Petitioner's statement made while being transported from the Charleston Police Department to magistrate court, because the videotape is admissible under the rule of completeness, West Virginia Rule of Evidence 106, to support his claim that he shot the victim to protect his brother.

Petitioner's Kanawha County petition also contains a section entitled "Reasons for Granting the Writ." (# 6, Ex. 5 at 29). Petitioner offers two overriding reasons:

I.     This court should grant this writ whether in Petitioner's murder case where the trial court instructed on voluntary manslaughter due to evidence of provocation, the trial court's refusal to instruct on provocation and explain that it reduces murder to voluntary manslaughter violated Petitioner's due process right to have the jury consider this evidence in determining his guilt or innocence.

II.    This case presents an important constitutional question left undecided in Gilmore v. Taylor, 508 U.S. 333, 113 S. Ct. 2112 (1993): Whether it violates due process for a State trial court to give jury instructions in a murder case that are reasonably likely to prevent the jury from considering important, relevant evidence of provocation which would reduce the offense to voluntary manslaughter.

(Id. at 29, 39).

---

[1]   The only specific allegation of ineffective assistance of counsel raised by Petitioner in the State court habeas petition concerned his counsel's failure to raise the issue of Petitioner's intoxication at the time of the crime. (Ex. 5 at 22).

4

On February 21, 2003, the Circuit Court of Kanawha County (King, J.) denied the petition, stating that "a hearing is not necessary in order for the Court to make a decision in this matter and further finds that good cause or other justification does not exist to grant said request." (Id., Ex. 6).

On March 18, 2003, Petitioner filed a pro se Petition for Appeal to the SCAWV, seeking an appeal of Judge King's February 21, 2003 order denying Petitioner's petition for a writ of habeas corpus. (Id., Ex. 7). The SCAWV refused the Petition for Appeal on July 18, 2003. (Id.)

Petitioner filed the instant Federal petition (# 1) on September 4, 2003. The Federal petition raises the following grounds for relief:

    A.   Ground one: Ineffective Assistance of Counsel.

        1.   Counsel failed to call expert witnesses.

        2.   Counsel failed to offer proper instructions.

        3.   Counsel had inadequate time to prepare.

        4.   Intoxication instruction was incorrect statement of law.

B.   Ground two: Conviction invalid due to insufficient evidence to prove malice beyond a reasonable doubt. The State was not required to prove malice.

C.   Ground three: Trial court erred in refusing to give defense jury instructions. Defense requested instruction on theory of defense and th[e]re was competent evidence to support such theory.

D.  Ground four: Ex parte communication with jury.  The Clerk held communication with the jury outside the presence of [Petitioner] and the record.

E.  Ground five: Trial court erred by prohibiting the introduction of a WCHS videotape of [Petitioner's] statement.  The videotape contained defense facts & reason.

F.  Ground six: Trial court erred by not rendering findings of fact and conclusions of law.  Trial court did not submit findings of fact and conclusions of law as required in all rulings to State habeas petitions instead of a [sic] out right denial of said petition.

(Id., at 5-6A).

On September 18, 2003, the undersigned ordered Respondent to file an answer or other pleading in response to the Federal petition by October 31, 2003. (# 3).  On November 3, 2003, Respondent filed a Consolidated Answer, Motion to Dismiss and Motion for Summary Judgment and Memorandum in Support Thereof. (# 5).  Respondent also filed exhibits in support of his motion. (# 6).

On November 12, 2003, Petitioner was granted an extension of time until January 9, 2004, to file a response to Respondent's motions. (# 10).  Petitioner timely filed his "Rebuttal Response" on January 9, 2004. (# 11).  On February 9, 2004, Respondent filed a Reply to Petitioner's Response. (# 12).  The matter is ripe for determination.

## EXHAUSTION OF STATE REMEDIES

Respondent has not addressed Petitioner's exhaustion of State remedies, or his failure to do so, and has thereby waived that

6

issue. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

### STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the United States Supreme Court held that under the "contrary to" clause, a federal habeas court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. The Court went on to note that under the "unreasonable application" test, a federal habeas court may grant a writ of habeas corpus with respect to a claim

7

adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case.  Id. at 413.

The Circuit Court of Kanawha County summarily denied Petitioner's petition for a writ of habeas corpus, stating that "a hearing is not necessary in order for the court to make a decision in this matter and [the court] further finds that good cause or other justification does not exist to grant said request."  (# 6, Ex. 6).  The SCAWV then summarily refused Petitioner's appeal of the denial of his habeas petition.  (Id., Ex. 7).

The United States Court of Appeals for the Fourth Circuit has consistently held that "a summary state court decision on the merits of a federal constitutional claim is an 'adjudication' of the claim for purposes of § 2254(d)."  Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000)(en banc).  Beginning with Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998), and continuing with Weeks v. Angelone, 176 F.3d 249, 257 (4th Cir. 1999), aff'd, 528 U.S. 225 (2000), Baker v. Corcoran, 220 F.3d 276, 291 n.14 (4th Cir. 2000), Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000), and concluding with Bell v. Jarvis, the Fourth Circuit has ruled, in a variety of procedural contexts, that Federal courts are limited to a deferential review of the result of State court decisions.

The holding was stated most explicitly in Bell, an en banc decision which overruled Cardwell v. Greene, 152 F.3d 331 (4th Cir. 1998):

> We have consistently held that a summary state court decision on the merits of a federal constitutional claim is an "adjudication" of the claim for purposes of § 2254(d), and we reaffirm that holding today. See Bacon, 225 F.3d at 478; Baker, 220 F.3d at 291 n.14. Wright, 151 F.3d at 156-57; Cardwell, 152 F.3d at 339. When the state court fails to articulate the rationale behind its ruling, we must independently review the record and the applicable law. See Bacon, 225 F.3d at 478; Baker, 220 F.3d at 291 n.14. However, this independent review of the record and applicable law must be distinguished from a de novo review of the petitioner's claims and from a requirement that we make an independent determination on the merits of those claims. See, e.g., Aycox, 196 F.3d at 1178. It does not render the difference between de novo review and reasonableness review insignificant or equate to a requirement that the federal court independently ascertain whether, in its judgment, there has been a violation of the petitioner's constitutional rights prior to determining whether the state court's decision was reasonable. Rather,
>
> > we must uphold the state court's summary decision unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.... Our review is in fact deferential because we cannot grant relief unless the state court's result is legally or factually unreasonable.
>
> Id. (emphasis added); see also Harris, 212 F.3d at 943 n.1 ("Where a state court decides a constitutional issue by form order or without extended discussion, a habeas court should then focus on the result of the state court's decision, applying the standard articulated" by the AEDPA)(emphasis added).

Bell, 236 F.3d at 163.

Based upon <u>Bell</u>, the undersigned proposes that the presiding District Judge **FIND** that the State courts' decisions on Petitioner's habeas corpus claims were an adjudication on the merits for purposes of § 2254(d).   The State courts did not articulate the rationale behind their rulings denying Petitioner's habeas corpus claims.  Therefore, the undersigned proposes that the presiding District Judge **FIND** that the appropriate standard of review is an independent, but deferential, review of the record and the applicable law to determine whether the State courts' decisions (i.e. the "results") were legally or factually unreasonable.

### FACTUAL BACKGROUND

During the late evening hours of November 21 and the early morning hours of November 22, 1998, Petitioner and his brother, Lamont Moore, were at Shooters, a bar located in Charleston, West Virginia.  Moore was celebrating his 22nd birthday, and had been "pretty much drinking [] the whole day."  (# 6, Ex. 8 at 211-213, 241-243).  Moore came to the club with his friends Cherie Freeman and Jay Kimble.  (Ex. 8 at 211-214).  Throughout the evening, Moore was repeatedly admonished by the bouncers concerning his behavior. (Ex. 8 at 216-218, 234-235, Ex. 9 at 137-138, 153-154, 163-164, 195-196; Ex. 10 at 8-11).  As the bar was closing, Moore was seen dropping his pants in front of some female patrons, and was asked to leave.   (Ex. 8 at 235; Ex. 9 at 198; Ex. 10 at 10).   Moore became belligerent and confrontational with the staff and began to

harass other patrons in the bar, including Nathaniel Rogers. (Ex. 8 at 218-219; Ex. 9 at 180-181, 199-200). Petitioner pulled Moore out of the bar. (Ex. 10 at 11).

Moore and Rogers had another confrontation outside the bar, which escalated to a physical altercation. (Ex. 8 at 220-222; Ex. 9 at 166-167; Ex. 10 at 14). Before the fight turned physical, Petitioner went to get his car, leaving Moore with Shannon Clayter, a friend of Petitioner. (Ex. 10 at 14-15). While he was at the car, Petitioner heard Clayter yelling for him, and Petitioner grabbed a .32 caliber revolver from the driver's door side pocket. (Ex. 10 at 19, 97).

When Petitioner returned to the scene, Rogers was on top of Moore. (Ex. 8 at 224-225; Ex. 10 at 19-20). Rogers was not armed. (Ex. 8 at 20-21, 239; Ex. 9 at 169-170; Ex. 10 at 37-38). Petitioner, without warning, shot Rogers, hitting him in the shoulder. (Ex. 9 at 168-169). As Rogers moved away from Moore, Petitioner shot him three more times in the back. (Ex. 9 at 169; Ex. 10 at 20, 92). Rogers collapsed and died in the street. (Ex. 10 at 20, 92). According to witnesses, Petitioner brandished the gun, and then fled the scene with Moore, Clayter, and Freeman, in Petitioner's grey BMW. (Ex. 9 at 170-171, 210; Ex. 10 at 44). Before Petitioner drove away, he tore the temporary tags off of his car. (Ex. 9 at 172, 209-211; Ex. 10 at 21, 45).

Petitioner went to his mother's house, where he prayed with his mother and some of his siblings.  (Ex. 8 at 231, 252-265; Ex. 10 at 24-27).  Petitioner then burned the temporary tags from the car, put the car in the garage and left in another vehicle to go to his girlfriend's home, where his daughter was staying.  (Ex. 10 at 46-47, 102-104).  Upon arrival at his girlfriend's house at Washington Manor, Petitioner, at the suggestion of Clayter, threw the gun in the Elk River.  (Ex. 10 at 27-28, 104).

Petitioner and Clayter slept for a while at his girlfriend's house, and stayed at her house for most of the following day.  (Ex. 10 at 29-30). At some point, Petitioner and Clayter went out to "get some marijuana and alcohol."  (Ex. 10 at 48).  After seeing his picture on the news, Petitioner left to take his daughter and his girlfriend back to his mother's house.  (Ex. 10 at 32).  Petitioner was arrested on the way there.  (Ex. 10 at 33-34, 93).

Following his arrest, Petitioner gave a statement to police in which he stated, "he was on my brother, and I ran over there and I shot once, and he backed up and was running away, and I shot three more times."  (Ex. 8 at 141).  As Petitioner was taken to his arraignment, he was questioned by a reporter from WCHS-TV news. During the interview, Petitioner stated that he shot Rogers to get him off his brother.

At trial, the State called three Shooters employees as witnesses.  Two of the employees, Daniel Reed and Terry Romeo, were

12

working as bouncers on the night of the crime. (Ex. 9 at 133-177). The third employee, James Buckley, was not on duty that night, but was a patron at the bar. (Ex. 9 at 193-217). The State also called Jay Kimble, a friend of Lamont Moore, who went to the bar with Moore that night. (Ex. 9 at 178-193).

These witnesses all testified that Moore was causing a disturbance in the bar that night. Buckley testified that Moore began harassing and provoking Rogers inside the club. (Id. at 199). Buckley further testified that, after Petitioner shot Rogers, he "taunted" the onlookers and exclaimed "I'll shoot you, too." (Id. at 210).

Law enforcement officers testified about securing the crime scene and the circumstances of Rogers' death, including the wounds he sustained, and that there was no evidence that Rogers was armed with a weapon. (Ex. 8 at 14-152). The State introduced photographs of the victim's body and the scene. However, the State never recovered the murder weapon. (Ex. 8 at 36-37).

The State also introduced evidence of Petitioner's statement given to the police following his arrest, which the trial court had determined to have been a voluntary and knowing statement. (Ex. 8 at 138-145; Ex. 13). Petitioner's counsel was not permitted to introduce the videotape of the WCHS interview of Petitioner in rebuttal to the police statement. The State also called State Medical Examiner James A. Caplan, who testified concerning the

13

forensic pathology, including the location and trajectory of the bullets, and the cause of Rogers' death.  (Ex. 8 at 155-186).

The defense theory at trial was that Petitioner panicked with concern for the safety of his brother, and that Petitioner did not intend to kill Rogers.  Petitioner, his mother, and Moore testified, emphasizing Petitioner's devotion to his family and his habit of prayer. (Ex. 8 at 208-266; Ex. 10 at 67-69).  Petitioner also called a firearms expert to testify about .32 caliber revolvers and the speed with which they can be fired.  (Ex. 8 at 188-207).

Petitioner's friend, Shannon Clayter, who witnessed the shooting, also testified.  Clayter indicated that he and Petitioner had been drinking and smoking marijuana earlier in the day. Clayter also testified that Moore was drunk and belligerent at the club that night.  Clayter offered details concerning Moore's behavior after leaving the club and the events of the shooting. Clayter further testified about Petitioner's actions following the shooting.  (Ex. 10 at 24-27).

Petitioner's testimony reiterated the testimony of the other witnesses concerning Moore's behavior in the bar.  (Ex. 10 at 79-84).  Petitioner further indicated that Moore and Rogers had words outside the bar, and that Petitioner pulled Moore away from Rogers, and then left to get the car.  (Ex. 10 at 90).

14

Petitioner admitted to shooting and killing Rogers. Petitioner did not state that he believed Rogers had a weapon at the time of the shooting. (Ex. 10 at 129-130). Petitioner only stated that he was in a panic thinking that Rogers was beating up on Moore. Petitioner testified that he did not intend to kill Rogers, that he shot him "to get him off [his] brother" and that he shot three more times because "everything happened that fast" and "[he] didn't even have time to think." (Ex. 10 at 92, 98-100).

Petitioner also testified that he was intoxicated at the time of the crime. He stated that he and Clayter had consumed most of a fifth of gin earlier in the evening, and that he had six or seven drinks at the bar. (Ex. 10 at 78-79). Petitioner also stated that he was intoxicated and under stress when he gave his statement to the police, but that he gave it because he "felt it was the right thing to do and [he] wasn't trying to hide anything." (Ex. 10 at 93).

Petitioner testified that, after he fired the first shot, Rogers was "still swinging," so he shot three more times, and that "when [he] realized [Rogers] was running, [he] stopped shooting." (Ex. 10 at 96, 142-143). Petitioner admitted that he did not fire a warning shot or yell at Rogers to stop hitting Moore. (Ex. 10 at 145). Petitioner stated that he burned the tags and tossed the gun in the river because he was "very confused and scared . . . shocked really." (Ex. 10 at 104, 114).

Whereas the State's witnesses had testified that Moore started the fight with Rogers (Ex. 9 at 143, 166-167, 199), the testimony of Petitioner, Moore and Clayter portrayed Rogers as the initial aggressor in the altercation that led to the shooting.  (Ex. 8 at 219, 223-225; Ex. 10 at 16-19, 87, 89).

### ANALYSIS

#### I.   Motion to Dismiss - Non-cognizable claims.

A Federal habeas petitioner must demonstrate that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991); Wainwright v. Goode, 464 U.S. 78, 83 (1983). Respondent contends that several of Petitioner's grounds for habeas relief do not allege violations of Federal law, and Respondent has moved to dismiss those grounds for failure to state a claim upon which relief can be granted.  The undersigned will address each such ground in turn.

#### A.   Ground Three - Instructional Error.

In Ground Three of his Federal petition, Petitioner claims that the trial court erred in refusing to give defense jury instructions.  The petition simply states, "Defense requested instruction on theory of defense and there was competent evidence to support such theory."  (# 1 at 6, Ground Three).

In his Response to Respondent's motion, Petitioner contends that the trial court's instruction on self-defense or the defense

16

of another was "wholly lacking to the jury and such instruction did not provide the proper elements in which the jury would need to base their verdict." (# 11 at 18). Petitioner further contends that "[t]he State must prove the lack of self-defense beyond a reasonable doubt." (Id.) Petitioner also claims that the instruction given by the trial court concerning an inference of malice from the possession of a deadly weapon was improper. (Id.).

In his motion, Respondent contends that Ground Three of Petitioner's petition asserts errors of instruction committed by the trial court that do not infringe specific Federal constitutional rights, and that such grounds are not cognizable under section 2254. (# 5 at 22). Respondent further contends that "[e]rrors in jury instructions do not rise to the level of a constitutional violation unless the habeas petitioner can establish that the 'instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Cupp v. Naughten, 414 U.S. 141, 147 (1973).

It appears to the court that Petitioner alleges that the jury instructions were improper under both State and Federal Law. To the extent his claims relate to State law, they are not cognizable in Federal habeas corpus and should be dismissed. To the extent he argues that he was denied due process of law, the undersigned find his assertions to be unpersuasive.

The trial judge instructed the jury on the defense of another as follows:

> In this case, evidence has been offered that although Willie McGee shot and killed Nathaniel Rogers with a gun, he did so in defense of another, therefore, the killing was justified and should be excused.
>
> The law of the defense of another is if Willie McGee had reasonable grounds to believe and actually did believe that his brother, Lamont Moore, was in eminent [sic; imminent] danger of serious bodily harm or death from which he could have saved Lamont Moore by using deadly force against Lamont Moore's assailant.
>
> Willie McGee had to repel force with force, and to use deadly force in order to defend his brother. By deadly force -- in defense of his brother, Lamont Moore, must not have provoked the assault on or by Nathaniel Rogers or have been the aggressor.
>
> What one may wrongfully do in defense of himself when threatened with death or serious bodily harm he may do on behalf of his brother, but [if] the brother was at fault in provoking an assault that brother who provoked the assault must retreat as far as he safely can before his brother would be justified in taking the life of his assailant in defense of his brother.
>
> But if the brother was so drunk as to be mentally unable to know his duty to retreat or was physically unable to retreat, the brother is not bound to stand by and see him killed or suffer great bodily harm, because he does not under such circumstances retreat.
>
> Mere words, however insulting they may be without -- do not constitute provocation or aggression. The circumstances under which Willie McGee acted must have been such as to produce in the mind of a reasonably prudent person similarly situated the reasonable belief that the other person was then about to do his brother serious bodily harm or to kill him.
>
> In addition, Willie McGee must have actually believed that his brother was in eminent [sic; imminent] danger of death or serious bodily harm, and that bodily force must be used to repel it. It is not essential to

the right of the defense of another that the dangers
should, in fact, exist.

(Ex. 11 at 28-29).  This is an accurate statement of the law on

defense of others in West Virginia, and there is nothing in the

record to indicate that these instructions "so infected the entire

trial that the resulting conviction violates due process." Cupp v.

Naughten, 414 U.S. 141, 147 (1973).

At   trial,   Petitioner   offered   additional   instructions

concerning   "malice,"   "provocation,"   "justifiable   homicide,"

"drunkenness" and "voluntary and involuntary manslaughter," which

were refused by the trial court, either as being repetitive of

those in the court's charge, or as being an incomplete statement of

the law.   (Ex. 11 at 82-88).  Petitioner, by counsel, filed a

Motion for a New Trial, raising, inter alia, his objections to the

trial court's refusal of these instructions.  In a very detailed,

41-page order, the trial court denied the Motion for a New Trial,

finding in pertinent part:

> This Court finds that the instructions in this case
> in no way prohibited the defendant from putting on his
> theory of the defense.   Furthermore, this Court finds
> that the instructions given by this Court met the
> requirements of the United States Supreme Court's holding
> in Matthews [v. United States, 485 U.S. 58 (1988)][2],
> because a very detailed instruction was actually given
> relating to justified homicide in the form of defense of
> another person.   Moreover, the defense of another

---

[2]   In Matthews, the Supreme Court held that "[a]s a general
proposition, a defendant is entitled to an instruction as to any
recognized defense for which there exists evidence sufficient for
a reasonable jury to find in his favor."  485 U.S. at 63.

instruction that was given was offered by the defendant.

    This Court further finds that the instructions as a whole and not in isolation adequately and correctly stated the law on justified homicide in the form of defense of another. Additionally, this Court finds that the instructions given relating to justified homicide allowed the defendant to put on an effective defense.

    This Court further finds that it properly excluded the defendant's instruction labeled Justified Homicide because this Court did address the substance of the instruction in its charge. Furthermore, this Court's refusal did not seriously impair the defendant's ability to give an effective defense.

(Ex. 12 at 16-17). The trial court further found that the instructions given adequately informed the jury of the elements required to prove each of the possible verdicts, and properly instructed the jury on the issues of malice and provocation. (Ex. 12 at 10-41).

    The proposed defense instructions on provocation and malice were included as exhibits to Petitioner's petition for a direct appeal of his conviction. (Ex. 4, Appendices A and B). The undersigned has reviewed those instructions and finds that they are repetitive of the instructions given by the trial court.

    The other refused instructions are discussed in detail with respect to Petitioner's claim that he was denied effective assistance of counsel. Petitioner has not offered any evidence indicating that the refusal of instructions "so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973). Moreover, the United States

20

Supreme Court has held that "the omission of a required jury instruction, as alleged here, is 'less likely to be prejudicial than a misstatement of the law.'"  Nickerson v. Lee, 971 F.2d 1125, 1137-1138 (4th Cir. 1992)(quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

In connection with the instructions on elements of first and second degree murder, the trial court instructed the jury as follows:

> It is reasonable to infer that a person ordinarily intends to do that which he does or which is the natural or probable consequence of his knowing acts.  The jury may draw the inference that a person intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from an intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the State has proved beyond a reasonable doubt the required criminal intent.

(Ex. 11 at 24-25).  The trial court further instructed the jury as follows:

> if a man with a deadly weapon in his possession under circumstances which you do not believe afforded him excuse, justification or provocation for his conduct, give a fatal or lethal wound to a deceased, then in those circumstances "malice" and "intent to kill" may be inferred from the intentional use of a deadly weapon.

(Id. at 25).

In his Response, Petitioner contends that these instructions improperly shifted the burden of proof to the defense to demonstrate that he acted upon provocation and in the heat of passion, and without malice.  (# 11 at 18-21).  Petitioner cites

21

Mullaney v. Wilbur, 421 U.S. 684 (1975), in support of his contention that this instruction violated his Due Process rights. (Id. at 19).

In Mullaney, the United States Supreme Court held that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." 421 U.S. at 704. The instruction in Mullaney stated that, if the prosecution established that a homicide was both intentional and unlawful, then "malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion." Id. at 686.

The instruction in the instant case is distinguishable from that in Mullaney because the jury was merely instructed that it may infer malice from the use of a deadly weapon, not that malice is conclusively implied, minus proof to the contrary. Thus, the State was still required to prove malice beyond a reasonable doubt.

Petitioner raised this same claim in his Motion for a New Trial. In denying the claim, the trial court stated, in pertinent part:

> This Court after a careful reading of the entire instructions as a whole finds that it is clear that they were adequate to inform a reasonable juror as to the definition of malice and the legal inferences that could be drawn from the evidence in this case. More importantly, this Court finds that the instructions in this case as a whole did not allow the jury to draw any improper inferences from the evidence, nor did they

22

improperly switch the burden of proof upon the defendant. (Ex. 12 at 15).

Upon review of the instructions in their entirety, the undersigned proposes that the presiding District Judge **FIND** that there is nothing to indicate that the malice instructions given "so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973).

Accordingly, for the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that there was no violation of Petitioner's due process rights, either by the giving of these instructions by the trial court, or the refusal of the defense's instructions concerning these issues, and that Respondent is entitled to judgment as a matter of law on this claim. To the extent that Petitioner's argument on instructions alleges violations of State law, the undersigned proposes that the presiding District Judge **FIND** that the claim is not cognizable in Federal habeas corpus.

### B.    Ground Four - **Ex Parte Communication.**

In Ground Four of his Federal petition, Petitioner claims that the court clerk held a communication with the jury outside of the presence of the defendant, and off the record.  (# 1 at 6, Ground Four).  A defendant has a Fifth Amendment right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against a

charge." United States v. Gagnon, 470 U.S. 522, 526 (1985). Thus,
"'the presence of a defendant is a condition of due process to the
extent that a fair and just hearing would be thwarted by his
absence and to that extent only.'" Id. (quoting Snyder v. Mass.,
291 U.S. 97, 105-06 (1934)).

Respondent contends that Petitioner has not specified any
improper communication, and that the record does not support such
a finding.  (# 5 at 26-27).  Moreover, Respondent asserts that
Petitioner has not demonstrated how any alleged communication
substantially affected the outcome of his trial.  (Id. at 27).
Petitioner did not address this point in his Response.  The court
has not located any evidence in the record that there was a
communication with the jury outside Petitioner's presence which
adversely affected his right to due process of law and to defend
himself.  Accordingly, the undersigned proposes that the presiding
District Judge **FIND** that Petitioner has not stated a cognizable
claim under section 2254.

### C.    Ground Five - Inadmissibility of Videotape.

In Ground Five of his Federal petition, Petitioner claims that
the trial court erred by prohibiting the defense from introducing
into evidence a videotape of a statement Petitioner made to a WCHS
news reporter as he was being taken from the police station to his
arraignment.  (# 1 at 6A, Ground Five).  The trial court denied the
use of the videotape on the basis that it contained inadmissible

24

hearsay.  Petitioner claims that the tape contained "defense facts and reason," but provides no further information concerning this claim.  (Id.)

In his motion, Respondent states that "Petitioner provides no detail as to why this obvious hearsay is admissible other than a bizarre reference to Rule 106."  (# 5 at 25).  Respondent again emphasizes that "federal habeas review does not entail examining State court rulings for mere admissibility of evidence under State law" and that "[t]he admission of evidence does not state a claim cognizable in habeas corpus unless it is accompanied by 'circumstances impugning fundamental fairness or infringing specific constitutional protections.'"  (Id.)(citing Grindler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960)).

Respondent also cites to the United States Supreme Court's decision in Crane v. Kentucky, 476 U.S. 683, 690 (1986), in which the Court stated, "we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability -- even if the defendant would prefer to see the evidence admitted."  (Id. at 26).  Petitioner does not address this issue in his Response.

In ruling on the admissibility of the videotape, the trial court found:

> the videotape is not admissible because it contains
> inadmissible hearsay.  The videotape contains self
> serving statements made by the defendant in response to
> questions posed by a television reporter.  Moreover, the

25